MAILO ATONIO, Plaintiff

v.

IOANE SOANE and MISILAGI TI'A, Defendants

High Court of American Samoa
Land and Titles Division

LT No. 5-87

May 13, 1987

Before REES, Chief Justice, TAUANU'U, Chief
Associate Judge, and TUIAFONO, Associate Judge.

Counsel: Mailo Atonio pro se
For the Defendants, Asaua Fuimaono

Plaintiff Mailo brought this action against
Ioane Soane, alleging that Soane was building a
house on Mailo's individually owned land in Iliili.
Soane, a catechist, responded that the land
belonged to Ti'a and that Ti'a had given him
permission to build his house there. Ti'a seconded
Soane's story, and by mutual consent of the parties
Ti'a was added as a defendant.

The parties agree that Ti'a sold Mailo a tract
of land in Ili'ili in 1970. Mailo produced a deed
from the land records in the Territorial
Registrar's office containing metes and bounds of
the property as well as what purported to be the
notarized signature of Ti'a. Meko, a surveyor,
testified that he had recently retraced the metes
and bounds specified in this deed and that Soane's
house was within Mailo's property.

Ti'a admits he sold Mailo some land in Iliili, but claims it was a smaller tract. He testified that he showed Mailo the boundaries of the tract he intended to sell, that there was never any written evidence of the transaction, and that the signature on the deed was not his signature.

Mailo clearly prevails. The court has examined a number of examples of what Ti'a admits to be his signature; they vary widely in several respects. Some of the signatures are carefully executed in small and well-formed letters, others are large and carelessly executed. Sometimes Ti'a signs "Misilagi Ti'a," sometimes "Ti'a Misilagi." On the deed (as well as on several other official records filed in the règistrar's office at about the time of the transaction, which Ti'a does not admit to having signed) the signature is "Misilagi T." with the initial T in print form rather than in script. Defendants' counsel emphasized this feature of the contested signatures, but other features --- the initial M and several peculiarities in the formation of the smaller letters --- are similar in all the examples. A forger would presumably be as capable of imitating the script T as any other letter. If there is any reason for the differences other than carelessness, it is at least as likely that Ti'a (who has conveyed this land to at least one other person besides Mailo and Soane) was trying to disguise his signature as that Mailo or someone else was trying to imitate it.

In any case, the signature was notarized. The whole point to notarizing a signature is to avoid disputes like this one. If a notary does not know someone, he must ask for proof of identity before taking that person's oath. It is possible, of course, for a notary to be deceived or even to be dishonest, but there is a strong presumption that a notarized signature is valid. In this case Mailo produced an affidavit from the notary, who has left the Territory, to the effect that he would not have notarized the signature if it had not been that of Ti'a, but this affidavit was unnecessary to create the presumption. Ti'a has not carried his burden of rebutting it.

Even without the deed, however, the evidence preponderates in favor of Mailo. He produced a copy, certified by the then-Deputy Territorial Registrar, of a map of the property resulting from a survey done in 1970. Although the survey was done at the request of Mailo in anticipation of the

sale, the surveyor attested that Ti'a Misilagi had pointed out the boundaries to him. The boundaries on the map are the same as those in the deed Ti'a says he never signed. Ti'a says this map is irrelevant because the original has been lost or stolen from the official records, but the copy is certified and shows no signs of tampering.

Ti'a also produced two maps. One purported to show that the house was outside the boundaries of the tract defined by Mailo's deed. The other purported to show the boundaries of the tract originally conveyed to Mailo. Although each was done by a licensed surveyor, it is clear that each is simply a graphic representation of information given to the surveyor by Ti'a himself rather than of any objective evidence predating the present controversy.[1]

The only evidence that would give us any reason to suspect that Ti'a's boundaries might be the correct ones is the testimony of Ti'a's surveyor that the land described by the original survey is about one acre larger than it was supposed to be. If there were any doubt at all about the actual location of the original boundaries, we would be inclined to take more evidence in order to verify or rebut this estimate.

---

[1]. The surveyor who did the map of the "true" boundaries testified that these boundaries were based on monuments pointed out to him by Ti'a a few months ago rather than upon a deed or an earlier survey. Some of the monuments were trees and some were iron pins. According to Meko, however, there are also iron pins and concrete monuments all along the boundaries of the original deed and survey.

The surveyor who prepared Ti'a's other map was not produced in court, but this map seems to have been prepared in anticipation of the arrival of Soane and after Mailo had succeeded in evicting another minister of religion to whom Ti'a had previously sold the property. The tract it depicts is mostly outside Mailo's land, but there is no evidence (other than the testimony of Ti'a) that this is where the house was actually built. Meko, a witness whose testimony in this and other trials has always impressed the Court as honest and impartial, testified that when he retraced the original survey the house was clearly inside those boundaries.

In 1970, however, Ti'a not only signed a deed that referred to definite boundaries, but also went to the land and showed those boundaries to a surveyor whom he knew was preparing a description of them. Those boundaries, rather than the estimate of how many acres, "more or less," they enclosed, are the best evidence of the intentions of the parties in 1970.

The defendants are permanently enjoined from possessing, occupying, or otherwise interfering with the land in question, except that Soane will have a reasonable time in which to remove his fixtures and possessions. Since there was conflicting evidence about whose plantations were destroyed by Soane's construction, no damages will be awarded.